UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>LINDA WEBB,<br>                    Defendant. | NO.<br><br>**Complaint** |

Plaintiff United States of America, on behalf of its agency, the United States Department of Education (Education), alleges the following in support of its Complaint against Defendant Linda Webb (Ms. Webb):

### I.      Parties and Nature of Action

1.      This is an action by the United States to collect student loan debts from Ms. Webb under Education's William D. Ford Federal Direct Loan Program.  20 U.S.C. §§ 1087a-1087j.; 34 C.F.R. Part 685.

### II.      Jurisdiction and Venue

2.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 & 1345.

3.     Venue is proper in the Western District of Washington under 28 U.S.C. § 1391 because Ms. Webb resides in Longview, Washington.

### III.     Facts

**Ms. Webb Received a $5,081.68 Direct Consolidation Loan from the U.S. Department of Education and Signed a Promissory Note in 2001**

4.     In 2001, Ms. Webb applied for and was granted a Federal Direct Consolidation Loan from Education under the William D. Ford Federal Direct Loan Program (Direct Loan Program) under Title IV, Part D of the Higher Education Act of 1965, as amended, 20 U.S.C. 1087a *et seq.* (34 C.F.R. Part 685).  The Direct Consolidation Loan's details are more particularly set out in Education's Certificate of Indebtedness #1 OF 2, attached as Exhibit A.

5.     On or about July 18, 2001, Ms. Webb signed a Promissory Note (the 2001 Note) by which she promised, in exchange for her receipt of funds from the Direct Loan Program, to repay the Federal Direct Consolidation Loan with interest, fees, and Education's collection costs, including attorney's fees. A true and correct copy of the signature page from the 2001 Note, which contains Ms. Webb's promise to repay the amount borrowed, is attached as Exhibit B.

6.     Through the Direct Loan Program, Education disbursed to Ms. Webb $5,081.68 on or about August 24, 2001, at 6.875 percent interest per annum.

//

//

//

COMPLAINT - 2
(*USA v. Linda Webb*)

**Ms. Webb Received a $31,480.75 Direct Consolidation Loan from the U.S. Department of Education and Signed a Promissory Note in 2004**

7.  In 2004, Ms. Webb applied for and was granted a Federal Direct Consolidation Loan from Education under the Direct Loan Program under Title IV, Part D of the Higher Education Act of 1965, as amended, 20 U.S.C. 1087a *et seq.* (34 C.F.R. Part 685).  The Direct Consolidation Loan's details are more particularly set out in Education's Certificate of Indebtedness #2 OF 2, attached as Exhibit C.

8.      On or about April 19, 2004, Ms. Webb signed a Promissory Note (the 2004 Note) by which she promised, in exchange for her receipt of funds from the Direct Loan Program, to repay the Federal Direct Consolidation Loan with interest, fees, and Education's collection costs, including attorney's fees. A true and correct copy of the signature page from the 2004 Note, which contains Ms. Webb's promise to repay the amount borrowed, is attached as Exhibit D.

9.  Through the Direct Loan Program, Education disbursed to Ms. Webb $31,480.75 on or about July 12, 2004, at 4.375% interest per annum.

**Ms. Webb Defaulted on Both Promissory Notes
and Has Failed to Repay Her Debts to Education**

10.      On or about February 9, 2012, Ms. Webb defaulted on the 2001 Note by failing to make required payments.

11.      Pursuant to 34 C.F.R. § 685.202(b), a total of $2,020.03 in unpaid interest was capitalized and added to the principal balance of the loan taken in 2001.  Exhibit A; 34 C.F.R. § 685.202(b) (2001) (historic versions of

COMPLAINT - 3
(*USA v. Linda Webb*)

UNITED STATES ATTORNEY'S OFFICE
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
PHONE: 206-553-7970

section 685.202 in effect in 2001 and 2004 are attached hereto as Exhibits E and F, respectively).

12.     As of September 3, 2019, Ms. Webb owed Education $12,727.34 under the 2001 Note, comprised of $7,101.71 principal plus $5,625.63 interest.  Additional interest accrues on the principal amount at the daily rate of $1.34.  Exhibit A.

13.     On or about October 8, 2012, Ms. Webb defaulted on the 2004 Note by failing to make required payments.

14.     Pursuant to 34 C.F.R. § 685.202(b), a total of $3,148.07 in unpaid interest was capitalized and added to the principal balance of the loan taken in 2004.  Exhibit C; 34 C.F.R. § 685.202(b) (2004).

15.     As of September 3, 2019, Ms. Webb owed Education $54,143.07 on the Federal Direct Consolidation Loan taken in 2004, comprised of $34,628.82 principal plus $19,514.25 interest.  Additional interest accrues on the principal amount at the daily rate of $4.15.  Exhibit C.

16.     Under the terms of the William D. Ford Federal Direct Loan Program, when Ms. Webb defaulted on the Promissory Notes, her entire outstanding principal balance and accrued interest became immediately due and payable.  34 C.F.R. § 685.211(d)(1) (2001 and 2004) (historic versions in effect in 2001 and 2004 are attached hereto as Exhibits G and H, respectively).

17.     Under the terms of the Promissory Notes taken in 2001 and 2004, Ms. Webb agreed that, in the event of her default, she would pay Education's

COMPLAINT - 4
(*USA v. Linda Webb*)

UNITED STATES ATTORNEY'S OFFICE
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
PHONE: 206-553-7970

"collection costs including but not limited to attorney's fees and court costs." Exhibits B & D, respectively.

## Count I – Breach of Contract (2001 Note)

18.     The United States incorporates all foregoing paragraphs of the Complaint as if fully restated herein.

19.     Ms. Webb formed a contract with Education when she signed the 2001 Note by which she promised, in exchange for her receipt of the funds from the Direct Loan Program, to repay the Federal Direct Consolidation Loans with interest, fees, and Education's collection costs, including attorney's fees.

20.     Ms. Webb materially breached the 2001 Note by failing to make payments on her Federal Direct Consolidation Loan debt taken in 2001 when due, and persisted in that failure to make any payments toward the loans on or about February 9, 2012.

21.     Ms. Webb's material breach of the 2001 Note has caused the United States to suffer damages in the amount of $12,740.74 as of September 13, 2019; plus interest on the principal at the rate of $1.34 per day thereafter.

## Count II – Breach of Contract (2004 Note)

22.     The United States incorporates all foregoing paragraphs of the Complaint as if fully restated herein.

23.     Ms. Webb formed a contract with Education when she signed the 2004 Note by which she promised, in exchange for her receipt of the funds from the Direct Loan Program, to repay the Federal Direct Consolidation

COMPLAINT - 5
(*USA v. Linda Webb*)

UNITED STATES ATTORNEY'S OFFICE
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
PHONE: 206-553-7970

Loans with interest, fees, and Education's collection costs, including attorney's fees.

24.     Ms. Webb materially breached the 2004 Note by faili

25.     ng to make payments on her Federal Direct Consolidation Loan debt taken in 2004 when due, and persisted in that failure to make any payments toward the loans on or about October 8, 2012.

26.     Ms. Webb's material breach of the 2004 Note has caused the United States to suffer damages in the amount of $54,184.57 as of September 13, 2019; plus interest on the principal at the rate of $4.15 per day thereafter.

**Prayer for Relief**

WHEREFORE, the United States respectfully requests that the Court enter judgment in its favor, as follows:

a.     That Ms. Webb materially breached the 2001 and 2004 Notes by failing to make required payments;

b.     That, due to Ms. Webb's material breach of the Promissory Notes, Ms. Webb is currently liable in damages to the United States in the amount of $66,925.31 as follows:

- For her material breach of the 2001 Note, Ms. Webb owes $12,740.74, as of September 13, 2019; plus interest on the principal at the rate of $1.34 per day from September 14, 2019 until the judgment date; plus post-judgment interest at the statutory rate on and after the judgment date.

COMPLAINT - 6
(*USA v. Linda Webb*)

- For her material breach of the 2004 Note, Ms. Webb owes $54,184.57, as of September 13, 2019; plus interest on the principal at the rate of $4.15 per day from September 14, 2019 until the judgment date; plus post-judgment interest at the statutory rate on and after the judgment date.

c.      That Ms. Webb is liable for Education's collection costs, including reasonable attorney's fees and litigation costs; and

d.      All other relief in favor of the United States that the Court deems just and proper.

DATED this 13th day of September 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

s/ Kyle A. Forsyth
KYLE A. FORSYTH, WSBA # 34609
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970 /Fax: (206) 553-4067
E-mail: Kyle.Forsyth@usdoj.gov

COMPLAINT - 7
(*USA v. Linda Webb*)

UNITED STATES ATTORNEY'S OFFICE
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
PHONE: 206-553-7970

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
         Plaintiff

☐ 3   Federal Question
         *(U.S. Government Not a Party)*

☐ 2   U.S. Government
         Defendant

☐ 4   Diversity
         *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
         Proceeding

☐ 2   Removed from
         State Court

☐ 3   Remanded from
         Appellate Court

☐ 4   Reinstated or
         Reopened

☐ 5   Transferred from
         Another District
         *(specify)*

☐ 6   Multidistrict
         Litigation -
         Transfer

☐ 8   Multidistrict
         Litigation -
         Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

☐   CHECK IF THIS IS A **CLASS ACTION**
       UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:**      ☐ Yes    ☐No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**     **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**     **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**     **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**     **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**     **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**     **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**     **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**     **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) | |
| *Plaintiff(s)* | ) ) ) ) ) | |
| v. | ) | Civil Action No. |
| _____ | ) ) ) ) ) ) | |
| *Defendant(s)* | ) | |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                        *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# U. S. DEPARTMENT OF EDUCATION
## SAN FRANCISCO, CALIFORNIA

### CERTIFICATE OF INDEBTEDNESS #1 OF 2

LINDA WEBB
102 CLARK CREEK RD
LONGVIEW, WA 98632
Account No. XXXXX7157

I certify that U.S. Department of Education records show that the BORROWER named above is indebted to the United States in the amount stated below plus additional interest from 08/21/2019.

On or about 07/18/2001, the BORROWER executed a promissory note to secure a Direct Consolidation loan from the U.S. Department of Education. This loan was disbursed for $5,081.68 on 08/24/2001 at 6.875 % interest per annum. The loan was made by the Department under the William D. Ford Federal Direct Loan Program under Title IV, Part D of the Higher Education Act of 1965, as amended, 20 U.S.C. 1087a et seq. (34 C.F.R. Part 685). The Department demanded payment according to the terms of the note, and the BORROWER defaulted on the obligation on 02/09/2012. Pursuant to 34 C.F.R. § 685.202(b), a total of $2,020.03 in unpaid interest was capitalized and added to the principal balance.

The Department has credited a total of $0.00 in payments from all sources, including Treasury Department offsets, if any, to the balance. After application of these payments, the BORROWER now owes the United States the following:

| | |
|---|---|
| Principal: | $ 7,101.71 |
| Interest: | $ 5,625.63 |
| Total debt as of 08/21/2019: | $ 12,727.34 |

Interest accrues on the principal shown here at the rate of $1.34 per day.

Pursuant to 28 U.S.C. § 1746(2), I certify under penalty of perjury that the foregoing is true and correct.

Executed on: 09/03/22019

_____
Loan Analyst
Litigation Support Unit

AUG 07 2001

Borrower's Name _Linda Webb_

Borrower's Social Security Number _____

## Section E: Repayment Plan Selection

Carefully read the repayment plan information in "Direct Consolidation Loans" that accompanies this application and promissory note to understand your repayment plan options. Then, complete this section to select your repayment plan. Remember--

- All student loans must be repaid under the same repayment plan. Parent PLUS loans may be repaid under a different repayment plan.
- If you select the Income Contingent Repayment Plan, you must complete the "Repayment Plan Selection" and "Income Contingent Repayment Plan Consent to Disclosure of Tax Information" forms that accompany this application and promissory note. Your selection cannot be processed without these forms.
- If you want to consolidate a defaulted student loan(s) and you have not made a satisfactory repayment arrangement with your current holder(s), you must select the Income Contingent Repayment Plan.

31. Place an "X" in the box that corresponds to your repayment plan selection for each loan type. Note that Direct PLUS Consolidation Loans cannot be repaid under the Income Contingent Repayment Plan.

| | Income Contingent | Standard | Extended | Graduated |
|---|---|---|---|---|
| **STUDENT LOANS** *Direct Subsidized and Unsubsidized Consolidation Loans* | ☒ | ☐ | ☐ | ☐ |
| **PARENT LOANS** *Direct PLUS Consolidation Loans* | Not Available | ☐ | ☐ | ☐ |

## Section F: Promissory Note (Continued on reverse side)

To be completed and signed by borrower and spouse, if applicable

**Promise to Pay:**

I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note (note) to discharge my prior loan obligations, plus interest, and other fees that may become due as provided in this note. If I fail to make payments on this note when due, I will also pay collection costs including but not limited to attorney's fees and court costs. If ED accepts my application, I understand that ED will on my behalf send funds to the holder(s) of the loan(s) selected for consolidation in order to pay off this loan(s). I further understand that the amount of this loan will equal the sum of the amount(s) that the holder(s) of the loan(s) verified as the payoff balance(s) on that loan(s) selected for consolidation. My signature on this note will serve as my authorization to pay off the balance(s) of the loan(s) selected for consolidation as provided by the holder(s) of such loan(s).

This amount may be more or less than the estimated total balance I have indicated in Section D. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the consolidation loan.

I understand that this is a Promissory Note. I will not sign this note before reading it, including the text on the reverse side, even if I am advised not to read the note. I am entitled to an exact copy of this note and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree, to the terms and conditions of this note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

If consolidating jointly with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us qualify for cancellation. We further understand that we may postpone repayment of the loan only if we provide ED with written requests that confirm Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us at the same time.

## I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.

32. Signature of Borrower _Linda Webb_ Date _7-18-01_

Signature of Spouse (if consolidating jointly) _____ Date _____

**U. S. DEPARTMENT OF EDUCATION**
**SAN FRANCISCO, CALIFORNIA**

**CERTIFICATE OF INDEBTEDNESS #2 OF 2**

LINDA WEBB
102 CLARK CREEK RD
LONGVIEW, WA 98632
Account No. XXXXX7157

I certify that U.S. Department of Education records show that the BORROWER named above is indebted to the United States in the amount stated below plus additional interest from 08/21/2019.

On or about 04/19/2004, the BORROWER executed a promissory note to secure a Direct Consolidation loan from the U.S. Department of Education. This loan was disbursed for $31,480.75 on 07/12/2004 at 4.375 % interest per annum. The loan was made by the Department under the William D. Ford Federal Direct Loan Program under Title IV, Part D of the Higher Education Act of 1965, as amended, 20 U.S.C. 1087a et seq. (34 C.F.R. Part 685). The Department demanded payment according to the terms of the note, and the BORROWER defaulted on the obligation on 10/08/2012. Pursuant to 34 C.F.R. § 685.202(b), a total of $3,148.07 in unpaid interest was capitalized and added to the principal balance.

The Department has credited a total of $0.00 in payments from all sources, including Treasury Department offsets, if any, to the balance. After application of these payments, the BORROWER now owes the United States the following:

Principal:                    $ 34,628.82

Interest:                     $ 19,514.25

Total debt as of 08/21/2019:  $ 54,143.07

Interest accrues on the principal shown here at the rate of $4.15 per day.

Pursuant to 28 U.S.C. § 1746(2), I certify under penalty of perjury that the foregoing is true and correct.

Executed on:  09/03/2019            _____
                                    Loan Analyst
                                    Litigation Support Unit

Promissory Note

**Borrower's Name:** LINDA WEBB
**Borrower's Social Security Number:**

APR 2 3 2004

**REPAYMENT PLAN SELECTION**

Carefully read question #5, "What are my repayment plan options?," on the "Frequently Asked Questions" Page to understand the repayment plans available to you. Then, complete this section to select your repayment plan. Remember--

- All student loans must be repaid under the same repayment plan. Parent PLUS loans may be repaid under a different repayment plan.
- If you select the Income Contingent Repayment Plan, you must complete the "Repayment Plan Selection" AND "Income Contingent Repayment Plan Consent to Disclosure of Tax Information" forms. Both forms can be downloaded from the "Forms and Publications" Page. **Your selection cannot be processed without these forms.**
- **If you want to consolidate a defaulted student loan(s) and you have not made a satisfactory repayment arrangement with your current holder(s), you must select the Income Contingent Repayment Plan.**

Place an "X" in the box that corresponds to your repayment plan selection for each loan type. Note that Direct PLUS Consolidation Loans cannot be repaid under the Income Contingent Repayment Plan.

|  |  | Income Contingent | Standard | Extended | Graduated |
|---|---|---|---|---|---|
| **STUDENT LOANS** | *Direct Subsidized and Unsubsidized Consolidation Loans:* | X |  |  |  |
| **PARENT LOANS** | *Direct Plus Consolidation Loans:* | N/A |  |  |  |

## PROMISSORY NOTE

**Promise to Pay:**
I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note (note) to discharge my prior loan obligations, plus interest, and other fees that may become due as provided in this note. If I fail to make payments on this note when due, I will also pay collection costs including but not limited to attorney's fees and court costs. If ED accepts my application, I understand that ED will on my behalf send funds to the holder(s) of the loan(s) selected for consolidation in order to pay off this loan(s). I further understand that the amount of this loan will equal the sum of the amount(s) that the holder(s) of the loan(s) verified as the payoff balance(s) on that loan(s) selected for consolidation. My signature on this note will serve as my authorization to pay off the balance(s) of the loan(s) selected for consolidation as provided by the holder(s) of such loan(s).

This amount may be more or less than the estimated total balance I have indicated in the Loan Information Section. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the consolidation loan.

I understand that this is a Promissory Note. I will not sign this note before reading it, including the text on the reverse side, even if I am advised not to read the note. I am entitled to an exact copy of this note and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree, to the terms and conditions of this note, including the Borrower Certification and Authorization printed on the reverse side and the Borrower's Rights and Responsibilities.

If consolidating jointly with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us qualify for cancellation. We further understand that we may postpone repayment of the loan only if we provide ED with written requests that confirm Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us at the same time.

**I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.**

*Linda Webb*                                        *4-19-04*
Signature of Borrower                               Date

_____                    _____
Signature of Spouse(If consolidating jointly)        Date

**Off. of Postsecondary Educ., Education** **§ 685.202**

Loan under the procedures specified in § 685.220.

(Authority: 20 U.S.C. 1087a *et seq.*, 1091a)

[64 FR 58965, Nov. 1, 1999, as amended at 65 FR 65629, Nov. 1, 2000]

### § 685.202 Charges for which Direct Loan Program borrowers are responsible.

(a) *Interest*—(1) *Interest rate for Direct Subsidized Loans and Direct Unsubsidized Loans.* (i) *Loans first disbursed before July 1, 1995.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 3.1 percentage points, but does not exceed 8.25 percent.

(ii) *Loans first disbursed on or after July 1, 1995 and before July 1, 1998.* (A) *During the in-school, grace, and deferment periods.* The interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 2.5 percentage points, but does not exceed 8.25 percent.

(B) *During all other periods.* The interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 3.1 percentage points, but does not exceed 8.25 percent.

(iii) *Loans first disbursed on or after July 1, 1998.* (A) *During the in-school, grace, and deferment periods.* The interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 1.7 percentage

points, but does not exceed 8.25 percent.

(B) *During all other periods.* The interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 2.3 percentage points, but does not exceed 8.25 percent.

(2) *Interest rate for Direct PLUS Loans.* (i) *Loans first disbursed before July 1, 1998.* (A) *Interest rate for periods ending before July 1, 2001.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 preceding that period. The interest rate is equal to the bond equivalent rate of 52-week Treasury bills auctioned at the final auction held prior to that June 1 plus 3.1 percentage points, but does not exceed 9 percent.

(B) *Interest rates for periods beginning on or after July 1, 2001.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 26 preceding that period. The interest rate is equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the last calendar week ending on or before that June 26 plus 3.1 percentage points, but does not exceed 9 percent.

(ii) *Loans first disbursed on or after July 1, 1998.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 3.1 percentage points, but does not exceed 9 percent.

(3) *Interest rate of Direct Consolidation Loans.* (i) *Interest rate for Direct Subsidized Consolidation Loans and Direct Unsubsidized Consolidation Loans.* (A) *Loans first disbursed before July 1, 1995.* The interest rate is the rate established for Direct Subsidized Loans and

§ 685.202                                    **34 CFR Ch. VI (7–1–01 Edition)**

Direct Unsubsidized Loans in paragraph (a)(1)(i) of this section.

(B) *Loans first disbursed on or after July 1, 1995 and before July 1, 1998.* The interest rate is the rate established for Direct Subsidized Loans and Direct Unsubsidized Loans in paragraph (a)(1)(ii) of this section.

(C) *Loans for which the first disbursement is made on or after July 1, 1998 and prior to October 1, 1998, and loans for which the disbursement is made on or after October 1, 1998 for which the consolidation application was received by the Secretary before October 1, 1998.* The interest rate is the rate established for Direct Subsidized Loans and Direct Unsubsidized Loans in paragraph (a)(1)(iii) of this section.

(D) *Loans for which the consolidation application is received by the Secretary on or after October 1, 1998 and before February 1, 1999.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 2.3 percentage points, but does not exceed 8.25 percent.

(E) *Loans for which the consolidation application is received by the Secretary on or after February 1, 1999.* During all periods, the interest rate is based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but does not exceed 8.25 percent.

(ii) *Interest rate for Direct PLUS Consolidation Loans.* (A) *Loans first disbursed before July 1, 1998.* The interest rate is the rate established for Direct PLUS Loans in paragraph (a)(2)(i) of this section.

(B) *Loans for which the first disbursement is made on or after July 1, 1998 and prior to October 1, 1998, and loans for which the disbursement is made on or after October 1, 1998 for which the consolidation application was received by the Secretary before October 1, 1998.* The interest rate is the rate established for Direct PLUS Loans in paragraph (a)(2)(ii) of this section.

(C) *Loans for which the consolidation application is received by the Secretary on or after October 1, 1998 and before February 1, 1999.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 2.3 percentage points, but does not exceed 8.25 percent.

(D) *Loans for which the consolidation application is received by the Secretary on or after February 1, 1999.* During all periods, the interest rate is based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but does not exceed 8.25 percent.

(b) *Capitalization.* (1) The Secretary may add unpaid accrued interest to the borrower's unpaid principal balance. This increase in the principal balance of a loan is called "capitalization."

(2) For a Direct Unsubsidized Loan or a Direct Unsubsidized Consolidation Loan that qualifies for a grace period, the Secretary capitalizes the unpaid interest that accrues on the loan when the borrower enters repayment.

(3) Notwithstanding § 685.208(g)(5) and § 685.209(d)(3), for a Direct Loan not eligible for interest subsidies during periods of deferment, and for all Direct Loans during periods of forbearance, the Secretary capitalizes the unpaid interest that has accrued on the loan upon the expiration of the deferment or forbearance.

(4) Except as provided in paragraph (b)(3) of this section and in § 685.208(g)(5), and § 685.209(d)(3), the Secretary annually capitalizes unpaid interest when the borrower is paying under the alternative or income contingent repayment plans and the borrower's scheduled payments do not cover the interest that has accrued on the loan.

(5) The Secretary may capitalize unpaid interest when the borrower defaults on the loan.

(c) *Loan fee for Direct Subsidized, Direct Unsubsidized, and Direct PLUS Loans.* The Secretary—

832

(1)(i) Charges a borrower a loan fee not to exceed four percent of the principal amount of the loan on a Direct Subsidized or Direct Unsubsidized Loan; and

(ii) Charges a borrower a loan fee of four percent of the principal amount of the loan on a Direct PLUS Loan.

(2) Deducts the loan fee from the proceeds of the loan;

(3) In the case of a loan disbursed in multiple installments, deducts a pro rated portion of the fee from each disbursement; and

(4) Applies to a borrower's loan balance the portion of the loan fee previously deducted from the loan that is attributable to any portion of the loan that is—

(i) Repaid or returned within 120 days of disbursement, unless—

(A) The borrower has no Direct Loans in repayment status and has requested, in writing, that the repaid or returned funds be used for a different purpose; or

(B) The borrower has a Direct Loan in repayment status, in which case the payment is applied in accordance with §685.211(a) unless the borrower has requested, in writing, that the repaid or returned funds be applied as a cancellation of all or part of the loan; or

(ii) Returned by a school in order to comply with the Act or with applicable regulations.

(d) *Late charge.* (1) The Secretary may require the borrower to pay a late charge of up to six cents for each dollar of each installment or portion thereof that is late under the circumstances described in paragraph (d)(2) of this section.

(2) The late charge may be assessed if the borrower fails to pay all or a portion of a required installment payment within 30 days after it is due.

(e)(1) *Collection charges before default.* Notwithstanding any provision of State law, the Secretary may require that the borrower or any endorser pay costs incurred by the Secretary or the Secretary's agents in collecting installments not paid when due. These charges do not include routine collection costs associated with preparing letters or notices or with making personal contacts with the borrower (*e.g.*, local and long-distance telephone calls).

(2) *Collection charges after default.* If a borrower defaults on a Direct Loan, the Secretary assesses collection costs on the basis of 34 CFR 30.60.

(Authority: 20 U.S.C. 1087a *et seq.*, 1091a)

[59 FR 61690, Dec. 1, 1994, as amended at 61 FR 29900, June 12, 1996; 62 FR 63434, Nov. 28, 1997; 64 FR 46254, Aug. 24, 1999; 66 FR 34765, June 29, 2001]

### §685.203   Loan limits.

(a) *Direct Subsidized Loans.* (1) In the case of an undergraduate student who has not successfully completed the first year of a program of undergraduate education, the total amount the student may borrow for any academic year of study under the Federal Direct Stafford/Ford Loan Program in combination with the Federal Stafford Loan Program may not exceed the following:

(i) $2,625 for a program of study of at least a full academic year in length.

(ii) For a one-year program of study with less than a full academic year remaining, the amount that is the same ratio to $2,625 as the—

$$\frac{\text{Number of semester, trimester, quarter, or clock hours enrolled}}{\text{Number of semester, trimester, quarter, or clock hours in academic year.}}$$

(iii) For a program of study that is less than a full academic year in length, the amount that is the same ratio to $2,625 as the lesser of the—

the terms and conditions of both Direct Consolidation Loans and the types of loans that may be consolidated.

(2) Once the applicant has submitted the completed application and promissory note to the Servicer, the Secretary makes the Direct Consolidation Loan under the procedures specified in § 685.220.

(Authority: 20 U.S.C. 1087a *et seq.*, 1091a)

[64 FR 58965, Nov. 1, 1999, as amended at 65 FR 65629, Nov. 1, 2000]

### § 685.202  Charges for which Direct Loan Program borrowers are responsible.

(a) *Interest*—(1) *Interest rate for Direct Subsidized Loans and Direct Unsubsidized Loans.* (i) *Loans first disbursed before July 1, 1995.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 3.1 percentage points, but does not exceed 8.25 percent.

(ii) *Loans first disbursed on or after July 1, 1995 and before July 1, 1998.* (A) *During the in-school, grace, and deferment periods.* The interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 2.5 percentage points, but does not exceed 8.25 percent.

(B) *During all other periods.* The interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 3.1 percentage points, but does not exceed 8.25 percent.

(iii) *Loans first disbursed on or after July 1, 1998.* (A) *During the in-school, grace, and deferment periods.* The interest rate during any twelve-month period beginning on July 1 and ending on

June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 1.7 percentage points, but does not exceed 8.25 percent.

(B) *During all other periods.* The interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 2.3 percentage points, but does not exceed 8.25 percent.

(2) *Interest rate for Direct PLUS Loans.* (i) *Loans first disbursed before July 1, 1998.* (A) *Interest rates for periods ending before July 1, 2001.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 preceding that period. The interest rate is equal to the bond equivalent rate of 52-week Treasury bills auctioned at the final auction held prior to that June 1 plus 3.1 percentage points, but does not exceed 9 percent.

(B) *Interest rates for periods beginning on or after July 1, 2001.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 26 preceding that period. The interest rate is equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the last calendar week ending on or before that June 26 plus 3.1 percentage points, but does not exceed 9 percent.

(ii) *Loans first disbursed on or after July 1, 1998.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 3.1 percentage points, but does not exceed 9 percent.

(3) *Interest rate of Direct Consolidation Loans*—(i) *Interest rate for Direct Subsidized Consolidation Loans and Direct Unsubsidized Consolidation Loans.* (A) *Loans first disbursed before July 1, 1995.* The interest rate is the rate established for Direct Subsidized Loans and Direct Unsubsidized Loans in paragraph (a)(1)(i) of this section.

(B) *Loans first disbursed on or after July 1, 1995 and before July 1, 1998.* The interest rate is the rate established for Direct Subsidized Loans and Direct Unsubsidized Loans in paragraph (a)(1)(ii) of this section.

(C) *Loans for which the first disbursement is made on or after July 1, 1998 and prior to October 1, 1998, and loans for which the disbursement is made on or after October 1, 1998 for which the consolidation application was received by the Secretary before October 1, 1998.* The interest rate is the rate established for Direct Subsidized Loans and Direct Unsubsidized Loans in paragraph (a)(1)(iii) of this section.

(D) *Loans for which the consolidation application is received by the Secretary on or after October 1, 1998 and before February 1, 1999.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 2.3 percentage points, but does not exceed 8.25 percent.

(E) *Loans for which the consolidation application is received by the Secretary on or after February 1, 1999.* During all periods, the interest rate is based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but does not exceed 8.25 percent.

(ii) *Interest rate for Direct PLUS Consolidation Loans.* (A) *Loans first disbursed before July 1, 1998.* The interest rate is the rate established for Direct PLUS Loans in paragraph (a)(2)(i) of this section.

(B) *Loans for which the first disbursement is made on or after July 1, 1998 and prior to October 1, 1998, and loans for which the disbursement is made on or after October 1, 1998 for which the consolidation application was received by the Secretary before October 1, 1998.* The interest rate is the rate established for Direct PLUS Loans in paragraph (a)(2)(ii) of this section.

(C) *Loans for which the consolidation application is received by the Secretary on or after October 1, 1998 and before February 1, 1999.* During all periods, the interest rate during any twelve-month period beginning on July 1 and ending on June 30 is determined on the June 1 immediately preceding that period. The interest rate is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to that June 1 plus 2.3 percentage points, but does not exceed 8.25 percent.

(D) *Loans for which the consolidation application is received by the Secretary on or after February 1, 1999.* During all periods, the interest rate is based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but does not exceed 8.25 percent.

(b) *Capitalization.* (1) The Secretary may add unpaid accrued interest to the borrower's unpaid principal balance. This increase in the principal balance of a loan is called "capitalization."

(2) For a Direct Unsubsidized Loan or a Direct Unsubsidized Consolidation Loan that qualifies for a grace period, the Secretary capitalizes the unpaid interest that accrues on the loan when the borrower enters repayment.

(3) Notwithstanding § 685.208(g)(5) and § 685.209(d)(3), for a Direct Loan not eligible for interest subsidies during periods of deferment, and for all Direct Loans during periods of forbearance, the Secretary capitalizes the unpaid interest that has accrued on the loan upon the expiration of the deferment or forbearance.

(4) Except as provided in paragraph (b)(3) of this section and in § 685.208(g)(5), and § 685.209(d)(3), the Secretary annually capitalizes unpaid interest when the borrower is paying under the alternative or income contingent repayment plans and the borrower's scheduled payments do not cover the interest that has accrued on the loan.

(5) The Secretary may capitalize unpaid interest when the borrower defaults on the loan.

(c) *Loan fee for Direct Subsidized, Direct Unsubsidized, and Direct PLUS Loans.* The Secretary—

(1)(i) Charges a borrower a loan fee not to exceed four percent of the principal amount of the loan on a Direct Subsidized or Direct Unsubsidized Loan; and

(ii) Charges a borrower a loan fee of four percent of the principal amount of the loan on a Direct PLUS Loan.

(2) Deducts the loan fee from the proceeds of the loan;

(3) In the case of a loan disbursed in multiple installments, deducts a pro rated portion of the fee from each disbursement; and

(4) Applies to a borrower's loan balance the portion of the loan fee previously deducted from the loan that is attributable to any portion of the loan that is—

(i) Repaid or returned within 120 days of disbursement, unless—

(A) The borrower has no Direct Loans in repayment status and has requested, in writing, that the repaid or returned funds be used for a different purpose; or

(B) The borrower has a Direct Loan in repayment status, in which case the payment is applied in accordance with §685.211(a) unless the borrower has requested, in writing, that the repaid or returned funds be applied as a cancellation of all or part of the loan; or

(ii) Returned by a school in order to comply with the Act or with applicable regulations.

(d) *Late charge.* (1) The Secretary may require the borrower to pay a late charge of up to six cents for each dollar of each installment or portion thereof that is late under the circumstances described in paragraph (d)(2) of this section.

(2) The late charge may be assessed if the borrower fails to pay all or a portion of a required installment payment within 30 days after it is due.

(e)(1) *Collection charges before default.* Notwithstanding any provision of State law, the Secretary may require that the borrower or any endorser pay costs incurred by the Secretary or the Secretary's agents in collecting installments not paid when due. These charges do not include routine collection costs associated with preparing letters or notices or with making personal contacts with the borrower (*e.g.*, local and long-distance telephone calls).

(2) *Collection charges after default.* If a borrower defaults on a Direct Loan, the Secretary assesses collection costs on the basis of 34 CFR 30.60.

(Authority: 20 U.S.C. 1087a *et seq.*, 1091a)

[59 FR 61690, Dec. 1, 1994, as amended at 61 FR 29900, June 12, 1996; 62 FR 63434, Nov. 28, 1997; 64 FR 46254, Aug. 24, 1999; 66 FR 34765, June 29, 2001]

### § 685.203  Loan limits.

(a) *Direct Subsidized Loans.* (1) In the case of an undergraduate student who has not successfully completed the first year of a program of undergraduate education, the total amount the student may borrow for any academic year of study under the Federal Direct Stafford/Ford Loan Program in combination with the Federal Stafford Loan Program may not exceed the following:

(i) $2,625 for a program of study of at least a full academic year in length.

(ii) For a one-year program of study with less than a full academic year remaining, the amount that is the same ratio to $2,625 as the—

$$\frac{\text{Number of semester, trimester, quarter, or clock hours enrolled}}{\text{Number of semester, trimester, quarter, or clock hours in academic year.}}$$

(iii) For a program of study that is less than a full academic year in length, the amount that is the same ratio to $2,625 as the lesser of the—

**Off. of Postsecondary Educ., Education** §685.211

(2) If a borrower does not select a repayment plan, the Secretary designates the standard repayment plan described in §685.208(b) for the borrower.

(b) *Changing repayment plans.* (1) A borrower may change repayment plans at any time after the loan has entered repayment by notifying the Secretary. However, a borrower who is repaying a defaulted loan under the income contingent repayment plan under §685.211(c)(3)(ii) may not change to another repayment plan unless—

(i) The borrower was required to and did make a payment under the income contingent repayment plan in each of the prior three (3) months; or

(ii) The borrower was not required to make payments but made three reasonable and affordable payments in each of the prior three months; and

(iii) The borrower makes and the Secretary approves a request to change plans.

(2)(i) A borrower may not change to a repayment plan that has a maximum repayment period of less than the number of years the loan has already been in repayment, except that a borrower may change to the income contingent repayment plan at any time.

(ii) If a borrower changes plans, the repayment period is the period provided under the borrower's new repayment plan, calculated from the date the loan initially entered repayment. However, if a borrower changes to the income contingent repayment plan, the repayment period is calculated as described in §685.209(c)(4).

(Authority: 20 U.S.C. 1087a *et seq.*)

[59 FR 61690, Dec. 1, 1994, as amended at 65 FR 65629, Nov. 1, 2000]

**§685.211   Miscellaneous   repayment provisions.**

(a) *Payment application and prepayment.* (1) The Secretary applies any payment first to any accrued charges and collection costs, then to any outstanding interest, and then to outstanding principal.

(2) A borrower may prepay all or part of a loan at any time without penalty. If a borrower pays any amount in excess of the amount due, the excess amount is a prepayment.

(3) If a prepayment equals or exceeds the monthly repayment amount under the borrower's repayment plan, the Secretary—

(i) Applies the prepaid amount according to paragraph (a)(1) of this section;

(ii) Advances the due date of the next payment unless the borrower requests otherwise; and

(iii) Notifies the borrower of any revised due date for the next payment.

(4) If a prepayment is less than the monthly repayment amount, the Secretary applies the prepayment according to paragraph (a)(1) of this section.

(b) *Repayment incentives.* To encourage on-time repayment, the Secretary may reduce the interest rate for a borrower who repays a loan under a system or on a schedule that meets requirements specified by the Secretary.

(c) *Refunds and returns of title IV, HEA program funds from schools.* The Secretary applies any refund or return of title IV, HEA program funds that the Secretary receives from a school under §668.22 against the borrower's outstanding principal and notifies the borrower of the refund or return.

(d) *Default.* (1) *Acceleration.* If a borrower defaults on a Direct Loan, the entire unpaid balance and accrued interest are immediately due and payable.

(2) *Collection charges.* If a borrower defaults on a Direct Loan, the Secretary assesses collection charges in accordance with §685.202(e).

(3) *Collection of a defaulted loan.* (i) The Secretary may take any action authorized by law to collect a defaulted Direct Loan including, but not limited to, filing a lawsuit against the borrower, reporting the default to national credit bureaus, requesting the Internal Revenue Service to offset the borrower's Federal income tax refund, and garnishing the borrower's wages.

(ii) If a borrower defaults on a Direct Subsidized Loan, a Direct Unsubsidized Loan, a Direct Unsubsidized Consolidation Loan or a Direct Subsidized Consolidation Loan, the Secretary may designate the income contingent repayment plan for the borrower.

(e) *Ineligible borrowers.* (1) The Secretary determines that a borrower is ineligible if, at the time the loan was

847

§ 685.212                                    **34 CFR Ch. VI (7–1–01 Edition)**

made and without the school's or the Secretary's knowledge, the borrower (or the student on whose behalf a parent borrowed) provided false or erroneous information or took actions that caused the borrower or student—

(i) To receive a loan for which the borrower is wholly or partially ineligible;

(ii) To receive interest benefits for which the borrower was ineligible; or

(iii) To receive loan proceeds for a period of enrollment for which the borrower was not eligible.

(2) If the Secretary makes the determination described in paragraph (e)(1) of this section, the Secretary sends an ineligible borrower a demand letter that requires the borrower to repay some or all of a loan, as appropriate. The demand letter requires that within 30 days from the date the letter is mailed, the borrower repay any principal amount for which the borrower is ineligible and any accrued interest, including interest subsidized by the Secretary, through the previous quarter.

(3) If a borrower fails to comply with the demand letter described in paragraph (e)(2) of this section, the borrower is in default on the entire loan.

(4) A borrower may not consolidate a loan under § 685.220 for which the borrower is wholly or partially ineligible.

(f) *Rehabilitation of defaulted loans.* A defaulted Direct Loan is rehabilitated if the borrower makes 12 consecutive on-time, reasonable, and affordable monthly payments. The amount of such a payment is determined on the basis of the borrower's total financial circumstances. If a defaulted loan is rehabilitated, the Secretary instructs any credit bureau to which the default was reported to remove the default from the borrower's credit history.

(Authority: 20 U.S.C. 1087a *et seq.*)

[59 FR 61690, Dec. 1, 1994, as amended at 64 FR 57961, Oct. 27, 1999; 64 FR 59043, Nov. 1, 1999; 65 FR 65629, Nov. 1, 2000; 66 FR 34765, June 29, 2001]

§ 685.212  **Discharge of a loan obligation.**

(a) *Death.* (1) If a borrower (or the student on whose behalf a parent borrowed a Direct PLUS Loan) dies, the Secretary discharges the obligation of the borrower and any endorser to make

any further payments on the loan based on an original or certified copy of the borrower's (or student's in the case of a Direct PLUS loan) death certificate.

(2) If an original or certified copy of the death certificate is not available, the Secretary discharges the loan only based on other reliable documentation that establishes, to the Secretary's satisfaction, that the borrower (or student) has died. The Secretary discharges a loan based on documentation other than an original or certified copy of the death certificate only under exceptional circumstances and on a case-by-case basis.

(b) *Total and permanent disability.* (1) If the Secretary receives acceptable documentation that a borrower has become totally and permanently disabled, the Secretary discharges the obligation of the borrower and any endorser to make any further payments on the loan.

(2) Except as provided in paragraph (b)(3)(i) of this section, a borrower is not considered totally and permanently disabled based on a condition that existed at the time the borrower applied for the loan unless the borrower's condition substantially deteriorated after the loan was made so as to render the borrower totally and permanently disabled.

(3)(i) For a Direct Consolidation Loan, a borrower is considered totally and permanently disabled if he or she would be considered totally and permanently disabled under paragraphs (b) (1) and (2) of this section for all of the loans that were included in the Direct Consolidation Loan if those loans had not been consolidated.

(ii) For the purposes of discharging a loan under paragraph (b)(3)(i) of this section, provisions in paragraphs (b) (1) and (2) of this section apply to each loan included in the Direct Consolidation Loan, even if the loan is not a Direct Loan Program loan.

(iii) If requested, a borrower seeking to discharge a loan obligation under paragraph (b)(3)(i) of this section must provide the Secretary with the disbursement dates of the underlying loans.

(c) *Bankruptcy.* If a borrower's obligation to repay a loan is discharged in

(B) Fails to renew written consent upon the expiration of the five-year period for consent; or

(C) Withdraws consent and does not select another repayment plan.

(v) If a borrower defaults and the Secretary designates the income contingent repayment plan for the borrower but the borrower fails to provide the required written consent, the Secretary mails a notice to the borrower establishing a repayment schedule for the borrower.

(Approved by the Office of Management and Budget under control number 1845–0021)

(Authority: 20 U.S.C. 1087a *et seq.*)

[59 FR 66134, Dec. 22, 1994, as amended at 60 FR 33345, June 28, 1995; 60 FR 61823, Dec. 1, 1995; 61 FR 24447, May 15, 1996; 61 FR 31359, June 19, 1996; 64 FR 29183, May 28, 1999; 64 FR 58972, Nov. 1, 1999]

### §685.210   Choice of repayment plan.

(a) *Initial selection of a repayment plan.* (1) Before a Direct Loan enters into repayment, the Secretary provides the borrower a description of the available repayment plans and requests the borrower to select one. A borrower may select a repayment plan before the loan enters repayment by notifying the Secretary of the borrower's selection in writing.

(2) If a borrower does not select a repayment plan, the Secretary designates the standard repayment plan described in §685.208(b) for the borrower.

(b) *Changing repayment plans.* (1) A borrower may change repayment plans at any time after the loan has entered repayment by notifying the Secretary. However, a borrower who is repaying a defaulted loan under the income contingent repayment plan under §685.211(d)(3)(ii) may not change to another repayment plan unless—

(i) The borrower was required to and did make a payment under the income contingent repayment plan in each of the prior three (3) months; or

(ii) The borrower was not required to make payments but made three reasonable and affordable payments in each of the prior three months; and

(iii) The borrower makes and the Secretary approves a request to change plans.

(2)(i) A borrower may not change to a repayment plan that has a maximum repayment period of less than the number of years the loan has already been in repayment, except that a borrower may change to the income contingent repayment plan at any time.

(ii) If a borrower changes plans, the repayment period is the period provided under the borrower's new repayment plan, calculated from the date the loan initially entered repayment. However, if a borrower changes to the income contingent repayment plan, the repayment period is calculated as described in §685.209(c)(4).

(Authority: 20 U.S.C. 1087a *et seq.*)

[59 FR 61690, Dec. 1, 1994, as amended at 65 FR 65629, Nov. 1, 2000; 68 FR 75430, Dec. 31, 2003]

### §685.211   Miscellaneous   repayment provisions.

(a) *Payment application and prepayment.* (1) The Secretary applies any payment first to any accrued charges and collection costs, then to any outstanding interest, and then to outstanding principal.

(2) A borrower may prepay all or part of a loan at any time without penalty. If a borrower pays any amount in excess of the amount due, the excess amount is a prepayment.

(3) If a prepayment equals or exceeds the monthly repayment amount under the borrower's repayment plan, the Secretary—

(i) Applies the prepaid amount according to paragraph (a)(1) of this section;

(ii) Advances the due date of the next payment unless the borrower requests otherwise; and

(iii) Notifies the borrower of any revised due date for the next payment.

(4) If a prepayment is less than the monthly repayment amount, the Secretary applies the prepayment according to paragraph (a)(1) of this section.

(b) *Repayment incentives.* To encourage on-time repayment, the Secretary may reduce the interest rate for a borrower who repays a loan under a system or on a schedule that meets requirements specified by the Secretary.

(c) *Refunds and returns of title IV, HEA program funds from schools.* The Secretary applies any refund or return

837

of title IV, HEA program funds that the Secretary receives from a school under § 668.22 against the borrower's outstanding principal and notifies the borrower of the refund or return.

(d) *Default.* (1) *Acceleration.* If a borrower defaults on a Direct Loan, the entire unpaid balance and accrued interest are immediately due and payable.

(2) *Collection charges.* If a borrower defaults on a Direct Loan, the Secretary assesses collection charges in accordance with § 685.202(e).

(3) *Collection of a defaulted loan.* (i) The Secretary may take any action authorized by law to collect a defaulted Direct Loan including, but not limited to, filing a lawsuit against the borrower, reporting the default to national credit bureaus, requesting the Internal Revenue Service to offset the borrower's Federal income tax refund, and garnishing the borrower's wages.

(ii) If a borrower defaults on a Direct Subsidized Loan, a Direct Unsubsidized Loan, a Direct Unsubsidized Consolidation Loan or a Direct Subsidized Consolidation Loan, the Secretary may designate the income contingent repayment plan for the borrower.

(e) *Ineligible borrowers.* (1) The Secretary determines that a borrower is ineligible if, at the time the loan was made and without the school's or the Secretary's knowledge, the borrower (or the student on whose behalf a parent borrowed) provided false or erroneous information or took actions that caused the borrower or student—

(i) To receive a loan for which the borrower is wholly or partially ineligible;

(ii) To receive interest benefits for which the borrower was ineligible; or

(iii) To receive loan proceeds for a period of enrollment for which the borrower was not eligible.

(2) If the Secretary makes the determination described in paragraph (e)(1) of this section, the Secretary sends an ineligible borrower a demand letter that requires the borrower to repay some or all of a loan, as appropriate. The demand letter requires that within 30 days from the date the letter is mailed, the borrower repay any principal amount for which the borrower is ineligible and any accrued interest, in-cluding interest subsidized by the Secretary, through from the previous quarter.

(3) If a borrower fails to comply with the demand letter described in paragraph (e)(2) of this section, the borrower is in default on the entire loan.

(4) A borrower may not consolidate a loan under § 685.220 for which the borrower is wholly or partially ineligible.

(f) *Rehabilitation of defaulted loans.* (1) A defaulted Direct Loan, except for a loan on which a judgment has been obtained, is rehabilitated if the borrower makes 12 consecutive, on-time, reasonable, and affordable monthly payments. The amount of such a payment is determined on the basis of the borrower's total financial circumstances. If a defaulted loan is rehabilitated, the Secretary instructs any credit bureau to which the default was reported to remove the default from the borrower's credit history.

(2) A defaulted Direct Loan on which a judgment has been obtained may not be rehabilitated.

(Authority: 20 U.S.C. 1087a *et seq.*)

[59 FR 61690, Dec. 1, 1994, as amended at 64 FR 57961, Oct. 27, 1999; 64 FR 59043, Nov. 1, 1999; 65 FR 65629, Nov. 1, 2000; 66 FR 34765, June 29, 2001; 67 FR 67081, Nov. 1, 2002]

## § 685.212   Discharge of a loan obligation.

(a) *Death.* (1) If a borrower (or the student on whose behalf a parent borrowed a Direct PLUS Loan) dies, the Secretary discharges the obligation of the borrower and any endorser to make any further payments on the loan based on an original or certified copy of the borrower's (or student's in the case of a Direct PLUS loan) death certificate.

(2) If an original or certified copy of the death certificate is not available, the Secretary discharges the loan only based on other reliable documentation that establishes, to the Secretary's satisfaction, that the borrower (or student) has died. The Secretary discharges a loan based on documentation other than an original or certified copy of the death certificate only under exceptional circumstances and on a case-by-case basis.

(3) In the case of a Direct PLUS Consolidation Loan that repaid a Direct PLUS Loan or a Federal PLUS Loan